IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KEA NORRIS, et al** | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | **Civ. Acton No. 07-0665(RWR)** |
| | * | |
| | * | |
| **DISTRICT OF COLUMBIA, et al** | * | |
| Defendants | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiffs, J.N. and Kea Norris, by and through their attorneys Fatmata Barrie and The Law Offices of Christopher N. Anwah, PLLC, hereby moves this Honorable Court for summary judgment in favor of the Plaintiff as to all counts. As reasons therefore, Plaintiffs will establish that there exist no triable issues of material fact and that Plaintiffs are entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support thereof, Plaintiffs, incorporate by reference the attached Memorandum of Points and Authorities.

WHEREFORE, Plaintiffs pray this Honorable Court to grant this Motion and enter summary judgment in favor of Plaintiffs as to all counts of the complaint.

> Respectfully submitted
> LAW OFFICES OF CHRISTOPHER N.
> ANWAH, PLLC
>
> By: _____/s/FatmataBarrie/s/_____
> Fatmata Barrie, Bar #485122
> LAW OFFICES OF CHRSTOPHER N.
> ANWAH, PLLC
> 10 R Street, NE
> Washington, D.C. 20002
> Phone: (202) 626-0040
> Fax: (202) 626-0048
> Email: fbarrie@verizon.net

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KEA NORRIS, et al | * |
|     Plaintiffs | * |
| | * |
| v. | *   **Civ. Action No. 07-665 (RWR)** |
| | * |
| | * |
| DISTRICT OF COLUMBIA, et al | * |
|     Defendants(s) | * |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDA OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

For reasons set forth herein, Plaintiffs are entitled to summary judgment as to all counts. The undisputed material facts of this case will establish, inter alia, that (i) DCPS failed to comply with a March 6, 2006 Hearing Officer's Determination (hereinafter "HOD"); (ii) DCPS failed to complete appropriate evaluations of the student and failed to evaluate him in all areas of suspected disability; (iii) DCPS failed to provide J.N. with an appropriate placement for over two years; (iv) DCPS failed to provide J.N. with appropriate IEP, special education and related services and all his related services; (v) The hearing officer erred in not considering the student's regression in deciding the case.

On these controlling points there exist no genuine issue of material facts and accordingly, Plaintiffs are entitled to summary judgment as a matter of law.

**BACKGROUND FACTS**

On March 6, 2006 a Hearing Officer's Determination (HOD) was entered which *inter alia* ordered DCPS to complete a speech and language evaluation, occupational therapy evaluation and a clinical psychological within 10 days; a Functional Behavioral Assessment, and a Behavior Intervention Plan within 15 days of the order; to complete an Assistive Technology Assessment (AT) within 15 school days and convene a meeting to review the evaluations and for

2

DCPS to train the parent and teachers on the usage of the AT. (AR. at 202-205) DCPS failed to comply with the March 6, 2006 HOD because DCPS did not complete the evaluations nor hold the meeting within the appropriate time.

On 04/30/06, parent's advocate requested the evaluations per the HOD (JN-24) and on May 7, 2006, the advocate wrote a letter to Aiton (AR. at 185-186) informing them that the clinical and the AT were not completed. On 08/12/06 (AR. at 187-189), the parent's advocate forwarded DCPS a letter reminding them again that DCPS has only provided some of the evaluations.

On September 19th and 20th, the advocate contacted Aiton ES to inform the school that the meeting that they scheduled for 09/21/06 was not convenient and as such would like for the meeting to be re-scheduled. However, despite the several chances that the parent and advocate gave DCPS to complete the evaluations, and the several phone calls to DCPS to attempt to schedule the meeting, unbeknownst to the parent or advocate, DCPS went ahead and convened the meeting on 09/21//06. On 09/22/06 (AR. at 190-192), parents' advocate forwarded a letter to Aiton ES requesting a confirmation of one of the meeting dates that the advocate had left with the social worker via the telephone on 09/21/06. However, DCPS did not respond.

On 10/02/06, the advocate was finally able to speak to the special education coordinator (SEC) who informed the advocate that they went ahead with the meeting. On that same date, the advocate wrote a letter (AR. at 192-198) to the SEC and the office of mediation and compliance memorializing their conversation and the several phone calls and messages that the advocate left, including the dates she proposed for the meeting. However, DCPS did not respond and did not schedule another meeting.

On 10/18/06, (AR. at 199-201) parent's advocate forwarded a letter to DCPS requesting that the meeting be rescheduled and proposed dates for DCPS to choose from. However, DCPS

3

again did not respond to the request. Therefore, not only failing to adhere to the HOD but also failing to respond to the parent's several requests for a meeting and as a result, failing to include the parent in the decision making process of J.N.'s education.

On 06/06/03, (AR. at 93-97) DCPS completed a psycho-educational evaluation which found that J.N.'s standardized scores were as follows: Reading = 84, Reading Comprehension = 76, Math Reasoning = 106 and Spelling = 85. In February 2006, (AR. at 164-175) DCPS completed another psycho-educational evaluation and the standardized scores are as follows: Reading = 57 (27 points regression from 2003); Reading Comprehension = 60 (16 points regression from 2003); Math Reasoning = 84 (22 point regression from 2003); Spelling = 63 (22 point regression from 2003). Furthermore, although he showed immense regression, DCPS did not place him in a full time placement nor did they provide him with the intensive services he needed.

Therefore, the parent filed a new due process complaint for DCPS' failure to comply with the March 6, 2006 HOD and for the myriad of violations including the failure to provide the appropriate services, IEP, and placement. As a result of this complaint, a hearing was held on 11/30/06 in which the parent's attorney argued, *inter alia*, that the student has regressed and presented to the hearing officer with evidence of the immense regression experienced by J.N. Although there is abundant amount of evidence to show the clear regression, DCPS failed to admit to the fact and failed to provide him with the services he so desperately needed to progress academically.

## STATEMENT OF UNDISPUTED FACTS

1.  J. N. is an African American male residing in the District of Columbia born on November 03, 1995.

2.J.N. has attended DC public schools his entire educational career and his report card reflect below level scores and his evaluations reflect major regression. J.N. attended Aiton ES for his elementary years.

3.His 09/21/06 IEP reflects 14 hours of special education services (AR at 143-151).

4.On March 6, 2006 a Hearing Officer's Determination (HOD) was entered which *inter alia* ordered DCPS to complete a speech and language evaluation, occupational therapy evaluation and a clinical psychological within 10 days; a Functional Behavioral Assessment, and a Behavior Intervention Plan within 15 days of the order; to complete an Assistive Technology Assessment (AT) within 15 school days and convene a meeting to review the evaluations and for DCPS to train the parent and teachers on the usage of the AT. (AR. at 202-205)

5.On November 30, 2006, the hearing was convened.

6.At the hearing, the parent through counsel disclosed documents which include but are not limited to the letters indicated above with the fax confirmation that DCPS received the letters, and both the 2003 and 2006 psycho-educational evaluations.

7.At the hearing, the parent testified that she did not receive any phone calls from Aiton elementary school and DCPS provided no evidence that any contact was made with the parent or the parent's attorney's office prior to the expiration of the HOD's timeline. At the conclusion of the hearing, the hearing officer left the record open for the parties to submit opening and closing statements.

8.On 12/20/06, parent's attorney completed and forwarded to the hearing officer the written opening and closing statement but DCPS did not submit anything. (AR.10-17)

9.On 01/11/07 the Hearing Officer issued a HOD dismissing the case with prejudice. (AR.2-8).

# ARGUMENT
## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be entered for the moving party when there is no genuine issue of material fact. In ruling on a motion for summary judgment, the trial court addresses two issues: (1) whether the pleading, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine dispute as to any material fact and (2) whether the movant is entitled to judgment as a matter of law. In addition, inferences to be drawn from underlying facts must be viewed in the light most favorable to the opposing party, and even if it is unlikely that the opposing party will not prevail at trial. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

In decision interpreting Rule 56, the United States Supreme Court has disapproved any continued reluctance by trial courts to grant summary judgment in appropriate cases stating:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the [rules of procedure] which are designed "to secure the just, speedy and inexpensive determination of every action."

*Celotex Corp. v. Cartarett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986)(citations omitted).

The IDEA provides for judicial review in state and federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing. See 20 U.S.C. §1415(i)(2)(A).  20 U.S.C. §1415(e)(2) states that "the court shall review the records of the administrative proceedings, shall hear additional evidence at the request of the party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." District Court's review of a challenge to an administrative ruling brought under the Individuals with Disability Education Act (IDEA) base its decision on "preponderance of the evidence" in exercising its independent judgment at arriving at an appropriate placement and

programming decision. 20 U.S.C. §1415(i)(2)(B); See Lenn v. Portland School Committee, 998 F.2d 1083 (1st Cir. 1993).

The district court reviewing an HOD should "defer to the hearing officer's factual findings based on credibility judgment unless the non-testimonial, extrinsic evidence on the record would justify a contrary conclusion." S.H. v. State-Operated School Dist. Of the City of Newark, 336 F.3d 260, 269-71 (3rd Cir. 2003) (citations omitted).

**A.     THE COURT SHOULD REVERSE THE HEARING OFFICER'S DETERMINATION THAT DISMISSED THE CASE EVEN THOUGH DCPS DID NOT COMPLY WITH THE 06/09/06 HOD AND DCPS DID NOT ALLOW THE PAREN THE OPPORTUNITY TO PARTICIPATE IN THE DECISION MAKING OF HER CHILD EDUCATION**

Pursuant to the Consent Decree entered in *Blackman v. District of Columbia, Civil Action No. 97-1629 (D.D.C. Aug. 24, 2006)*, there is a rebuttable presumption of harm when a student is denied timely hearings or HOD and for students who failed to receive timely implementation of HODs and SAs. (Blackman/Jones Consent Decree, ¶ 74 at 39). In the instant case, DCPS failed to rebut this presumption of harm but yet the Hearing Officer dismissed Plaintiffs complaint based on his erroneous interpretations of the facts and failure to take into consideration the student's academic regression. According to the 03/06/06 HOD, ordered DCPS to provide a speech and language evaluation, occupational therapy evaluation and a clinical psychological within 10 days. The HOD also ordered DCPS to complete a Functional Behavioral Assessment, and a Behavior Intervention Plan within 15 days of the order; to complete an Assistive Technology Assessment (AT) within 15 school days and convene a meeting to review the evaluations. The HOD also ordered DCPS to train the parent and teachers on the usage of the AT and to convene a meeting. *AR at 202-205*. Nonetheless, DCPS did not do so even after the parent, through counsel made several requests for the evaluations and for the meeting. As a

result, the student did not have an appropriate IEP because the team did not meet on time. In fact, the DCPS include the parent in completing the IEP. *AR at 143-151*

Furthermore, where a school district has refused to implement a hearing officer's decision, courts generally find irreparable harm. *See e.g.*, *Olson, et al. v. Robinsdale Area Schools, et al.*, *2004 U.S. Dist. LEXIS 9858 (D. Minn. 2004)*; *Kantak v. Board of Educ., Liverpool Central School Dist.*, *1990 U.S. Dist. LEXIS 20986, 1990 WL 36803, at 2 (N.D.N.Y. 1990)* (holding that the "continued deprivation of the service . . . determined to be necessary to serve [the] individual education requirements . . . produce(s) a sufficient injury"). The "injury is actual and imminent because [the student] is currently being deprived of the free appropriate public education to which [he or] she is entitled under the IDEA." *Olson, et al v. Robinsdale Area Schools, et al* 2004 U.S. Dist. LEXIS 9858 at n8 (citing *A.T. v. New York State Educ. Dept.*, *1998 U.S. Dist. LEXIS 23275, 1998 WL 765371, at \*10 (E.D.N.Y. 1998)*).

The right to have a hearing officer's decision carried out is a right "secured by the laws of the United States." *Robinson v. Pindwerhughes, 810 F.2d 1270, 1275 (4th Cir. 1987)*. Additionally, a hearing officer's decision, save for appeal, "shall be final." 20 U.S.C. § 1415(i)(1)(A). Therefore, J.N.'s right to have the order carried out in it's entirety was violated and as a result, denying him a FAPE.

In the instant case, J.N. was harmed because DCPS did not comply with the 03/06/06 HOD and when they did hold the meeting, they still did not comply because they did not involve the parent and did not complete all the evaluations or train the staff and parent in the use of the Assistive Technology. In fact, they refused to comply because they did not complete the evaluations but yet failed to admit such at the hearing or state that the evaluations would be completed or re-schedule the hearing once the parent requested that the meeting should be rescheduled.

According to 20 U.S.C. §1414(e), "each local educational agency or state educational agency shall ensure that **the parents** of each child with a disability are **members of any group that makes decisions on the educational placement of their child.**" 34 C.F.R. 300.552(a)(1) states that "in determining the educational placement of a child with a disability, . . . each public agency shall ensure that the placement decision is made by a group of persons, including the parents . . . the meaning of the evaluation date, and the placement options." Additionally, DCPS did not have anyone testify at the hearing that had personal knowledge of the interactions between the SEC and the educational advocate. However, the parent's documents include all the letters written by the advocate, including the fax confirmations that came with it.

According to 20 USC §1415(f)(3)(E), the hearing officer is to find a denial of a FAPE if the procedural violation "significantly impeded the parent's opportunity to participate in the decision[-]making process regarding the provision of a free appropriate public education to the . . . child." In the instant case, DCPS clearly hindered the parent's right to participate in the decision making of the student's education because the mother testified that they were never members of a team that discussed placement or the educational services that J.N. is to receive. Additionally, DCPS did not have any evidence of their so-called attempts to hold a meeting as their 09/12/06 meeting notice's fax confirmation page does not state where the document went (bottom of the page where it states the date, time and what number it was sent to). In fact during the hearing, it was noted that one or two of the so-called notices were sent to a different fax number and not the advocate's fax number. *AR at 286-290*

Additionally, in <u>Bd. of Educ. of Hendrick Hudson Central Sch. Dist., v. Rowley</u>, 1981-1982 EHLR 553:656 (1982), the U.S. Supreme Court recognized that if the educational agency fails to follow the procedures enumerated in IDEA, then it follows that a child with disability has been denied FAPE. In addition, it has been found that if that failure to follow the IDEA

9

procedures hinders the right of the parents to participate in the formulation of their child's IEP, then that violation is likely to be considered more than a mere technicality. W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23, 18 IDELR 1019 (9th Cir. 1991).  In that case, the district gave the parents no options and took the stance of 'take it or leave it.' Id at 1484

In fact the social worker, on cross examination testified to the fact the parent is a member of the IEP team and as such should have a say as to the appropriateness of the placement and services for her child.  Therefore, the DCPS knowingly failed to allow the parent her statutory right to be involved in the decision-making of her child's education.

Furthermore, in Tice v. Botetourt County School Board, 908 F.2d 1200, 1203, the court stated that providing funding to state educational agencies "is conditioned on a state's compliance with extensive procedural requirement . . ."  Tice, in quoting Hall v. Vance County Bd. of Educ., 774- F.2d 629, 635 (4th Cir. 1985) stated "As we have **repeatedly held**, 'failures to meet the Act's procedural requirements are adequate grounds by themselves for holding that a school failed to provide . . . FAPE.'" Id. at 1206  See also Board of Educ. of Cabell County v. Dienelt, 843 F.2d 813, 815 (4th Cir. 1988). id. The issue in both Hall and Dienelt was that the educational agency did not adhere to the procedural guidelines to have the parents involved in the formulating of their child's IEP. id. at 1207  Similar to Hall and Dienelt, in the instant case, DCPS failed to adhere to the procedural rules when it failed to involve the parent in the decision making of J.N.'s educational needs, including placement.

In addition Tice quotes from Hudson v. Wilson, 828 F.2d 1059, 1063 (4th Cir. 1987) when it states that 'procedural noncompliance can by itself support a finding that a child has not been provided with FAPE.'  Therefore, the Hearing Officer should find that DCPS' failure to convene a meeting to discuss J.N.'s educational placement amounts to a denial of FAPE.

10

In addition to the above cases, <u>Briere v. Fair Haven Grade Sch. Dist.</u>, 948 F. Supp. 1242 (1996) supports the parents' contention that a procedural violation amounts to a denial of FAPE. The Court in <u>Briere</u> states, "IDEA requires that parents be afforded the opportunity to be involved in the educational planning process." <u>Id.</u> at 1250  It continues by saying that "The Supreme Court has emphasized the significance of strict adherence to procedures set out in IDEA in <u>Board of Education v. Rowley</u>, 458 U.S. 176, 73 L. Ed. 2d 690, 102 S. Ct. 3034 (1982)." The Court then quotes from <u>Rowley</u> when it states, 'we think that the importance Congress attached to these procedural safeguards cannot be gainsaid.' <u>Id.</u>

<u>Briere</u> continues by finding that the team's refusing to discuss options and to consider the parent's choice of placement "inhibited meaningful parental involvement and contravened the letter and the spirit of the statute" <u>Id</u> at 1254 and ". . .constituted a flagrant refusal to consider an involved and knowledgeable parent's placement proposal." <u>Id</u> at 1253  The Court found that a finding of denial of FAPE is warranted when 'the procedural inadequacies compromised the pupil's right to an appropriate education, **seriously hampered the parents' opportunity to participate** in the formulation process **. . .**" <u>Id.</u> at 1255

In the instant case, there is clear documentations of the several letters and communications to the school system by the parent's attorney requesting evaluations and requesting the reconvening of the meeting since DCPS unilaterally held the meeting without the mother.  However, as the evidence shows, DCPS did not comply with providing the parent with the opportunity to participate.

**B.   THE COURT SHOULD REVERSE THE DETERMINATION BY THE HEARING OFFICER'S DETERMINATION THAT T.H.'s PLACEMENT WAS APPROPRIATE.**

According to the *Bd. of Educ. of Hendrick Hudson Central Sch. Dist., v. Rowley*, 458 U.S. 176; 102 S. Ct. 3034, Free Appropriate Public Education (FAPE) must provide the child with meaningful acess to educational process and the education must be reasonably calculated to confer some educational benefit. However, in the instant case, J. N. was not able to receive "some educational" benefit because according to his testing completed by DCPS, he regressed in all subject areas ranging from 14 to 32 point regression. In *Reusch v. Fountain,* 872 F. Supp. 1421, 1425 (D. Md. 1994) the benefit conferred to the student has to amount to more than just a trivial progress.

In this case, J.N. did not even have the trivial progress because the record is clear that he regressed tremendously. In this case, there was no showing that Aiton ES has been and is an appropriate placement. The mother testified to the fact that J.N. has been at Aiton for over three years and yet has seen no improvement in him. This is clearly shown by the differences of his scores in his 06/23/03 *AR at 262-270* and his 02/2006 *AR at 164-175* psycho-educational evaluations. His scores are as follows:

| February 2006 Psycho-educational Standardized Scores | June 3, 2003 Psycho-educational Standardized Scores |
|---|---|
| 1. Reading = 57 | 84 --- Difference of 27 points |
| 2. Reading Comprehension = 60 | 76 --- Difference of 16 points |
| 3. Math Reasoning = 84 | 106 --- Difference of 22 points |
| 4. Spelling = 63 | 85 --- Difference of 22 points |

WIAT COMPOSITE

12

1. Reading = 54                                          77 --- Difference of 23 points

2. Math = 77                                             102---Difference of 25 points

As a result, clearly showing lack of any educational benefit much less "some educational" benefit as required under *Rowley*. Therefore, DCPS denied him a FAPE.

A placement is appropriate if (1) the LEA has complied with IDEA's administrative procedures and (2) the IEP generated by MDT was reasonably calculated to provide educational benefit. *Schoenbach v. District of Columbia*, 309 F. Supp. 2d 71, 2004 U.S. Dist. LEXIS 38667 (D.D.C., 2004). In this case, the DCPS did not comply with the administrative procedures because they did not review all the available evaluations with the parent and as a result did not complete the IEP with input from the parent. Additionally, the IEP is obviously not calculated to provide educational benefit as the student has regressed terribly and the student's IEP hours were not increased to address his deficits. Therefore, the placement is not appropriate and the DCPS has denied him a FAPE.

According to 20 U.S.C. §1415(f)(3)(E), ". . . a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education." In this case, J.N. regressed severely and as such he did not receive educational benefit and so was denied a FAPE. According to Florence *County School District Four, et al. v. Shannon Carter*, 510 U.S. 7, 'when a public school system had defaulted on its obligations under the Act, a private school placement is "proper under the Act" if the education provided by the private school is "reasonably calculated to enable the child to receive educational benefits."' As a result, since J.N. did not make any progress but regressed, the hearing officer could have placed him. Tuition reimbursement for a denial of FAPE is appropriate if the parent's choice of school can meet the child's needs. *Sch. Comm. Of Burlington v. Dep't of Ed.*, 471 U.S. 359, 368, 105 S. Ct. 85 L. Ed. 2d 385 (1985) During the

13

hearing the witness from High Road testified to the accommodations that they can provide J.N. High Road testified that they can provide J.N. with all services enumerated in his IEP and that they can provide him with educational benefit and can meet his needs.

During the hearing, the DCPS did not present any evidence to indicate that J.N. made any progress. Although the DCPS claims that J.N. was appropriately placed, they could provide to documentation to support that claim. However, their own evaluations show the great regression that J.N. has shown over a period of three years. Therefore, DCPS has denied him a FAPE and as such a private school placement is warranted.

## **CONCLUSION**

**WHEREFORE**, the Plaintiffs respectfully request this Honorable Court to grant plaintiff's motion for summary judgment and vacate the Hearing Officer's Decision entered January 11, 2007. In addition, the court should grant the Plaintiff's request for attorneys' fees and costs for this action and the administrative proceedings.

Respectfully Submitted,
THE LAW OFFICES OF CHRISTOPHER N. ANWAH, PLLC

By:      /s/FatmataBarrie/s/
Fatmata Barrie, Bar #485122
LAW OFFICES OF CHRISTOPHER N. ANWAH, PLLC
10 R Street, NE
Washington, D.C. 20002
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: fbarrie@verizon.net

## **CERTIFICATE OF SERVICE**

    I HEREBY certify that copies of the foregoing motion were electronically filed on January 15, 2008 and the court would notify parties using Court's e-file system.

                                                              _____*/s/FatmataBarrie/s/*_____
                                                                       Fatmata Barrie