## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KEA NORRIS, et al** | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | **Civil Action No. 07-0665 (RWR)** |
| | * | |
| | * | |
| **DISTRICT OF COLUMBIA, et al** | * | |
| Defendants(s) | * | |

**************************************

### OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiffs, J.N. and Kea Norris, by and through their attorneys Fatmata Barrie and LAW OFFI CES OF CHRISTOPHER N. ANWHAH, hereby moves this Honorable Court for summary judgment in favor of the Plaintiff as to all counts and to deny Defendants' motion for summary judgment.  As reasons therefore, Plaintiffs will establish there exist no triable issues of material fact and that Plaintiffs are entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.  In support thereof, Plaintiffs, incorporate by reference the attached Memorandum of Points and Authorities.

WHEREFORE, Plaintiffs pray this Honorable Court to grant this Motion and enter summary judgment in favor of Plaintiffs as to all counts of the complaint and deny Defendants' motion for summary judgment.

Respectfully submitted
LAW OFFICES OF CHRISTOPHER N. ANWAH.

By:   _/s/    Fatmata Barrie    /s/_____
Fatmata Barrie, Bar #485122
LAW OFFICES OF CHRISTOPHER N. ANWAH
10 R Street, NE
Washington, D.C. 20002
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: fbarrie@verizon.net

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **J.N., et al**        * | | |
|      Plaintiffs             * | | |
|                        * | | |
|     v.                    * | | **Civil Action No. 07-0665 (RWR)** |
|                        * | | |
|                        * | | |
| **DISTRICT OF COLUMBIA, et al**   * | | |
|      Defendants(s)       * | | |

**************************************

**MEMORANDA OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
RESPONSE TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT**

## INTRODUCTION

For reasons set forth herein, Plaintiffs are entitled to summary judgment as to all counts

and the defendants' motion for summary judgment should be denied.  Plaintiff will show that the

hearing officer erred in his decision to dismiss the plaintiff's complaint because the defendant

denied the student a Free, Appropriate Public Education (FAPE) when it failed to comply with

the March 6, 2006 HOD, failed to provide him an appropriate placement, services, IEP and failed

to include the parent in the decision making process of the student's education.

Although the District of Columbia Public Schools' (DCPS) response and motion for

summary judgment focuses only on whether Aiton can provide the student with educational

benefit, the due process complaint that was dismissed joined included allegations against Martin

Luther King Jr. Elementary School and Emery Elementary School not just Aiton and that due to

denial from all three schools, the DCPS had not provided J.N. with an appropriate education for

years and as a result, he has severely regressed over the three year period in question.

Although Defendants claim in their introduction that Aiton can provide the student with a

FAPE and that J.N. has made progress, no evidence was provided to show such progress, ie,

academic scores that show progress or report cards that show progress.  In fact the only academic scores, report cards and IEP report cards in the record shows that J.N. was in fact not progressing.  Although Defendants argue that DCPS is now in compliance and that the delay is not harmful, they failed to consider the Blackman/Jones Consent Decree, which clearly states that failure to timely comply with a HOD is a rebuttable presumption of harm.  In this case, the fact that the student's report cards and test scores clearly shows no signs of progress and the DCPS did not and has not provided any concrete evidence that the harm has been rebutted, it is a denial of FAPE that the HOD was not timely complied with.

On these controlling points there exist no genuine issue of material facts and accordingly, Plaintiffs are entitled to summary judgment as a matter of law.

## ARGUMENT

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be entered for the moving party when there is no genuine issue of material fact. In ruling on a motion for summary judgment, the trial court addresses two issues: (1) whether the pleading, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine dispute as to any material fact and (2) whether the movant is entitled to judgment as a matter of law. In addition, inferences to be drawn from underlying facts must be viewed in the light most favorable to the opposing party, and even if it is unlikely that the opposing party will not prevail at trial. _Harlow v. Fitzgerald_, 457 U.S. 800 (1982).

In decision interpreting Rule 56, the United States Supreme Court has disapproved any continued reluctance by trial courts to grant summary judgment in appropriate cases stating:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the [rules of procedure] which are designed "to secure the just, speedy and inexpensive determination of every action."

*Celotex Corp. v. Cartarett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986)(citations omitted)

The IDEA provides for judicial review in state and federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing. See 20 U.S.C. §1415(i)(2)(A).  20 U.S.C. §1415(e)(2) states that "the court shall review the records of the administrative proceedings, shall hear additional evidence at the request of the party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." District Court's review of a challenge to an administrative ruling brought under the Individuals with Disability Education Act (IDEA) base its decision on "preponderance of the evidence" in exercising its independent judgment at arriving at an appropriate placement and programming decision. 20 U.S.C. §1415(i)(2)(B); *See Lenn v. Portland School Committee*, 998 F.2d 1083 (1st Cir. 1993).

The district court reviewing an HOD should "defer to the hearing officer's factual findings based on credibility judgment unless the non-testimonial, extrinsic evidence on the record would justify a contrary conclusion." *S.H. v. State-Operated School Dist. Of the City of Newark,* 336 F.3d 260, 269-71 (3rd Cir. 2003) (citations omitted).  In this case, the extrinsic evidence, ie, the repot cards, (A.R. 207-209) psycho-educational evaluations (A.R. 167 & A.R. 97) and IEP report card (A.R. 210) clearly justifies 'contrary conclusion.'  Therefore, this honorable court should deny defendant's motion for summary judgment and grant plaintiffs' motion for summary judgment.

The court accepts as true all of the complaint's factual allegations giving "the benefit of all inferences that can be derived from the facts alleged," *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994). The factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff.  *See Shear v. National Rifle Association of*

*America*, 606 F.2d 1251, 1253 (D.C. Cir. 1979).  Dismissal is only proper if, after the allegations of the complaint are construed in the light most favorable to the plaintiff, the facts and allegations in the complaint would fail to afford the plaintiff relief if proven.  *Ezra v. Pedas*, 682 A.2d 173, 174 (D.C. 1996).  The defendants have failed to make a showing that the complaint fails to state a claim upon which relief can be granted and in fact have failed to support their summary judgment motion arguments.  Although defendants cited to case law about the court giving due weight to the hearing officer's decision, it is also clear that the court is not required to blindly follow the determination of the hearing officer, especially when there is evidence contrary to the testimony provided.  Therefore, as the HOD in contention should be overturned.

## STATEMENT OF RELEVANT FACTS

J.N. is an African American male residing in the District of Columbia born on November 3, 1995.  On March 6, 2006 a Hearing Officer's Determination (HOD) was entered which *inter alia* ordered DCPS to complete a speech and language evaluation, occupational therapy evaluation and a clinical psychological within 10 days; a Functional Behavioral Assessment, and a Behavior Intervention Plan within 15 days of the order; to complete an Assistive Technology Assessment (AT) within 15 school days and convene a meeting to review the evaluations and for DCPS to train the parent and teachers on the usage of the AT.  (AR. at 202-205)  DCPS failed to comply with the March 6, 2006 HOD because DCPS did not complete the evaluations nor hold the meeting within the appropriate time.

On 04/30/06, parent's advocate requested the evaluations per the HOD (AR. at 181-184) and on May 7, 2006, the advocate wrote a letter to Aiton (AR. at 185-186) informing them that the clinical and the AT were not completed.  On 08/12/06 (AR. at 187-189), the parent's advocate forwarded DCPS another letter reminding them again that DCPS has only provided some of the evaluations.

On September 19th and 20th, the advocate contacted Aiton ES to inform the school that the meeting that they scheduled for 09/21/06 was not convenient and as such would like for the meeting to be re-scheduled.  However, despite the several chances that the parent and advocate gave DCPS to complete the evaluations, and the several phone calls to DCPS to attempt to schedule the meeting, unbeknownst to the parent or advocate, DCPS went ahead and convened the meeting on 09/21//06.  On 09/22/06, parents' advocate forwarded a letter to Aiton ES requesting a confirmation of one of the meeting dates that the advocate had left with the social worker via the telephone on 09/21/06.  (AR. at 190-192)  However, DCPS did not respond.

On 10/02/06, the advocate was finally able to speak to the special education coordinator (SEC) who informed the advocate that they went ahead with the meeting.  On that same date, the advocate wrote a letter (AR. at 192-198) to the SEC and the office of mediation and compliance memorializing their conversation and the several phone calls and messages that the advocate left, including the dates she proposed for the meeting.  However, DCPS did not respond and did not schedule another meeting.

On 10/18/06, (AR. at 199-201) parent's advocate forwarded a letter to DCPS requesting that the meeting be rescheduled and proposed dates for DCPS to choose from.  However, DCPS again did not respond to the request.  Therefore, not only failing to adhere to the HOD but also failing to respond to the parent's several requests for a meeting and as a result, failing to include the parent in the decision making process of J.N.'s education.

On 06/06/03, (AR. at 93-97) DCPS completed a psycho-educational evaluation which found that J.N.'s standardized scores were as follows:  Reading = 84, Reading Comprehension = 76, Math Reasoning = 106 and Spelling = 85.  In February 2006, DCPS completed another psycho-educational evaluation (AR. at 164-175) and the standardized scores are as follows:  Reading = 57 (27 points regression from 2003); Reading Comprehension = 60 (16 points

regression from 2003); Math Reasoning = 84 (22 point regression from 2003); Spelling = 63 (22 point regression from 2003).  Furthermore, although he showed immense regression, DCPS did not place him in a full time placement nor did they provide him with the intensive services he needed.  In fact DCPS maintained the same services and placement that has not worked for the three years in question.

J.N.'s report card shows all below level academic achievement (AR. 126-130 & AR. 207-208), the teacher comments discuss his lack of control and how it affects him in class (AR. 209), his Stanford Nine Scores show below level scores (AR. 131-133), and his IEP report card shows that he has continued "to exhibit an oppositional attitude." (AR. At 210)  However, according to DCPS, he is progressing.

According to Defendant's motion, DCPS wrote several letters to the parent's advocate with no response from the advocate.  (Defendant's Motion at page 7-8)  Obviously the documented letters from the parent's advocate ranging in date from April to October 2006 clearly shows that the parent's advocate made several contacts with the school system over a six-month period and yet DCPS claims that the parent's advocate did not respond to letters of invitation.

Although the hearing officer found that the DCPS made efforts to involve the parent, the hearing officer was biased because in the Transcript at 9 to 18, (herein after T. ___) during the beginning of the hearing, the hearing officer could not get past the fact that according to DCPS counsel DCPS offered to convene a meeting at the resolution session meeting.  Although the parent's attorney argued with the hearing officer that DCPS offered to convene a meeting on 12/13/07 and the hearing was being held on 11/30/07 and as such the meeting would not have taken place until after the due process hearing, that the parent was not happy with the placement and as a result, the parent did not accept the offer, the hearing officer insisted that the parent's

advocate was hindering the process.  According to _Christine Davis v. DC,_ Civil Action No. 05-2176, a parent is not required to accept the school system's offer in a resolution session meeting if he or she is not satisfied.  In the _Christine Davis_ case, the hearing officer dismissed the case, stating that the DCPS had provided the parent with a good offer.  Therefore, the HOD should be overturned as it is based on incorrect information and is based on bias.

During the hearing the plaintiff testified to how J.N. was doing at MLK and at Aiton ES.  According to the plaintiff's testimony during his attendance at MLK and at Aiton his behavior and academics were "terrible."  (T. 28)  The plaintiff further testified that during his time at MLK  he did not receive any special education services except for speech services. (id.)  The plaintiff also testified that J.N. had several behavior problems and he continued to function below level because he was fighting, disrespectful and was suspended almost every other week.  (T. 28-29)  DCPS provided no testimony to counter the parent's testimony about MLK or about the behaviors enumerated by the parent.  However, despite all this, the hearing officer did not consider the behaviors and low academic scores at both MLK and at Aiton ES when he made his decision.

## ARGUMENT

### A.  AITON AND MLK ARE NOT APPROPRIATE PLACEMENTS FOR J.N.

A placement is appropriate if (1) the LEA has complied with IDEA's administrative procedures and (2) the IEP generated by MDT was reasonably calculated to provide educational benefit. _Schoenbach v. District of Columbia_, 309 F. Supp. 2d 71, 2004 U.S. Dist. LEXIS 38667 (D.D.C., 2004).  In this case, the DCPS did not comply with the administrative procedures because they did not include the parent in the decision making process and as a result did not complete the IEP with input from the parent.  Additionally, the IEP is obviously not calculated to

provide educational benefit as the student has regressed terribly and the student's IEP reflected the same goals for over two years. (T. 120)  Therefore, the placement is not appropriate and the DCPS has denied him a FAPE.

Defendants state in their motion on page 10-11 that the plaintiff basis her argument on an inappropriate largely on the 2003 and 2006 psycho-educational evaluation.  It is correct that the plaintiff does rely on the two psycho-educational evaluations but the plaintiff also relies on report cards and teacher comments and on the IEP report cards which are documented reflection of how J.N. was doing.  Anyone can say that the student is progressing or is not progressing; however, if there is no documentation to show such progress then it has not been proven. Additionally, according to the teacher, he was progressing on his goals; however, his IEP report card shows otherwise.  Therefore, how can the system claim there is progress but the documents they generate are showing otherwise?  Additionally, defendants' counsel understates the severity of the regression by stating that the 2006 scores are lower than the 2003 scores because they are not just lower, they are severely lower because the regression ranges from 16 to 27 points.  This is a major depression in scores and one does not need an expert to see that.  As a result, what this shows is that both schools had not provided him with the appropriate services for him to gain educational benefit as is required by law and case law.  In fact, according to Bd. of Educ. of Hendrick Hudson Central Sch. Dist., v. Rowley, 1981-1982 EHLR 553:656 (1982), the school system must provide the student with some educational benefit to meet one of the prongs in determining whether the child is receiving a FAPE.  Ironically, the defendant claims that DCPS has provided the student with 'some educational benefit.'  (Defendants' Motion at page 11) However, when one looks at the student's scores, his report cards and his IEP report cards there is no benefit, not even "some" but regression.  Clearly this falls into even defendants' argument because a school must provide educational benefit not regression.  In *Reusch v. Fountain*, 872 F.

Supp. 1421, 1425 (D. Md. 1994) the benefit conferred to the student has to amount to more than just a trivial progress.  In this case, J.N. did not even have the trivial progress because the record is clear that he regressed tremendously.

According to Defendant's motion, the social worker testified that the student had made tremendous progress but yet the IEP report card for counseling shows that he was exhibiting the same behaviors.  Therefore, how can he have made "tremendous" progress but yet continuing to exhibit oppositional behaviors?  In fact Defendants' motion is littered with testimony from the DCPS' witness who claim that the student has made progress but yet nowhere in the entire motion is it shown, through testing, report cards or anything of the such that the so-called progress was actually achieved.

Defendant's motion states that the Plaintiff did not put forth any expert witness to tell the hearing officer that the student regressed and that none of the evaluations indicated that J.N. needed a full time placement. (Defendant's motion at page 11)  However, let us not forget that the school system completed both evaluations and although they found that he was regressing severely they chose to not make any clear recommendations.  Additionally, the Plaintiff did not rely on the counsel's opinion as stated in Defendants' motion on page 11 but rather relied on common sense.  It is clear that if a student was earning 80's in 2003 but is now earning 50's, there has been a regression.  The evaluations are factual and were completed by DCPS, they are not opinions.  If one does not rely on documentation, what should one rely on?  People can tell untruths but documents generated by the Defendant that show regression are more probative than the testimony provided by the Defendant.  Therefore, the notion that since Plaintiff has relied "only on documents" (Defendant's motion at 11) that somehow makes it not believable is baffling.

Although DCPS, through their counsel state on page 11 of their motion that the Plaintiff failed to dispute the testimony of three of their witnesses that is not true.  The Plaintiff's testimony clearly was a dispute to all that the Defendants claimed.  Additionally all documentations, including those generated by the Defendants contradicts their testimony.  Therefore, the Plaintiff did dispute the three witness' testimony and if anyone has *personal knowledge* of J.N. who better than the mother?

## B.  THE PLAINTIFF MADE ATTEMPTS TO PARTICIPATE BUT THE DISTRICT PREVENTED HER PARTICIPATION

According to 20 U.S.C. §1414(e), "each local educational agency or state educational agency shall ensure that **the parents** of each child with a disability are **members of any group that makes decisions on the educational placement of their child.**  34 C.F.R. 300.552(a)(1) states that "in determining the educational placement of a child with a disability, . . . each public agency shall ensure that the placement decision is made by a group of persons, including the parents . . . the meaning of the evaluation date, and the placement options."  However, that did not happen.  DCPS would like for this court to believe that they wanted to convene the meeting but the documentation clearly shows otherwise.  Let us not forget that the complaint was filed on September 11, 2006  (AR. 47) and the so-called attempts to convene the meeting took place after.  DCPS claims that they sent a notice on July 18, 2006 but the documents is proposing dates for July 1st and July 2nd.  (AR. 287)  Obviously that does not scream good faith effort.  Additionally, DCPS did not have anyone to testify at the hearing that had personal knowledge of the interactions between the Special Education Coordinator and the educational advocate.  However, the parent's documents include all the letters written by the advocate, including the fax

confirmations that came with it.  But yet the hearing officer disregarded the six letters written by the parent's advocate.

According to 20 USC §1415(f)(3)(E), the hearing officer is to find a denial of a FAPE if the procedural violation "significantly impeded the parent's opportunity to participate in the decision[-]making process regarding the provision of a free appropriate public education to the . . . child."  In the instant case, DCPS clearly hindered the parent's right to participate in the decision making of the student's education because the mother testified that they were never members of a team that discussed placement or the educational services that J.N is to receive.  In fact the so-called three notices all have the same proposed dates and time but sent at different times.  As such DCPS did not provide three notices but sent the same notice three times.  However, the advocate sent letters between April 2006 and October 2006 about evaluations and convening the meeting, ie 04/30/06, 05/07/06, 08/12/06, 09/22/06 (requesting a meeting), 10/02/06 (to the school and Mediation and Compliance Office), and finally 10/18/06 (no response to the 10/02/06 letter and so requested another meeting).  (AR. 181-201)  In fact the letters clearly show that the advocate, made diligent efforts not just to make sure the local school address the parent's concerns but also notified the DCPS headquarters.  However, nothing was done and as such the parent filed the due process complaint.  During the hearing the special education coordinator was not present and did not testify but yet the hearing officer penalized the parent because the advocate was not present at the meeting even though her several letters are in evidence.  (HOD, AR. at 7)

Additionally, in Bd. of Educ. of Hendrick Hudson Central Sch. Dist., v. Rowley, 1981-1982 EHLR 553:656 (1982), the U.S. Supreme Court recognized that if the educational agency fails to follow the procedures enumerated in IDEA, then it follows that a child with disability has been denied FAPE.  In addition, it has been found that if that failure to follow the IDEA

procedures hinders the right of the parents to participate in the formulation of their child's IEP, then that violation is likely to be considered more than a mere technicality.  W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23, 18 IDELR 1019 (9th Cir. 1991).  In that case, the district gave the parents no options and took the stance of 'take it or leave it.'  Id  at 1484

Furthermore, in Tice v. Botetourt County School Board, 908 F.2d 1200, 1203, the court stated that providing funding to state educational agencies "is conditioned on a state's compliance with extensive procedural requirement . . ."  Tice, in quoting Hall v. Vance County Bd. of Educ., 774- F.2d 629, 635 (4th Cir. 1985) stated "As we have **repeatedly held**, 'failures to meet the Act's procedural requirements are adequate grounds by themselves for holding that a school failed to provide . . . FAPE.'"  Id. at 1206  See also Board of Educ. of Cabell County v. Dienelt, 843 F.2d 813, 815 (4th Cir. 1988).  id.  The issue in both Hall and Dienelt was that the educational agency did not adhere to the procedural guidelines to have the parents involved in the formulating of their child's IEP.  id. at 1207  Similar to Hall and Dienelt, in the instant case, DCPS failed to adhere to the procedural rules when it failed to involve the parent in the decision making of J.N.'s educational needs, including placement.

In addition Tice quotes from Hudson v. Wilson, 828 F.2d 1059, 1063 (4th Cir. 1987) when it states that 'procedural noncompliance can by itself support a finding that a child has not been provided with FAPE.'  Therefore, the Hearing Officer should have found that DCPS' failure to convene a meeting, even after the parent requested it, to discuss J.N.'s educational placement amounts to a denial of FAPE.

In addition to the above cases, Briere v. Fair Haven Grade Sch. Dist., 948 F. Supp. 1242 (1996) supports the parents' contention that a procedural violation amounts to a denial of FAPE. The Court in Briere states, "IDEA requires that parents be afforded the opportunity to be involved in the educational planning process."  Id. at 1250  It continues by saying that "The

Supreme Court has emphasized the significance of strict adherence to procedures set out in IDEA in <u>Board of Education v. Rowley</u>, 458 U.S. 176, 73 L. Ed. 2d 690, 102 S. Ct. 3034 (1982)." The Court then quotes from <u>Rowley</u> when it states, 'we think that the importance Congress attached to these procedural safeguards cannot be gainsaid.' <u>Id</u>.

<u>Briere</u> continues by finding that the team's refusal to discuss options and to consider the parent's choice of placement "inhibited meaningful parental involvement and contravened the letter and the spirit of the statute" <u>Id</u> at 1254 and ". . .constituted a flagrant refusal to consider an involved and knowledgeable parent's placement proposal." <u>Id</u> at 1253 The Court found that a finding of denial of FAPE is warranted when 'the procedural inadequacies compromised the pupil's right to an appropriate education, **seriously hampered the parents' opportunity to participate** in the formulation process . . ." <u>Id</u>. at 1255

The Defendant's argument that a meeting took place on December 13, 2006 and the parent was not in attendance should be stricken as the HOD in question was as a result of a hearing that took place on November 30, 2006 before this December 13, 2006 meeting was to have taken place.   Additionally, Defendant's argument that the parent did not show should not be considered because there is nothing in the record that shows that there was an agreement for a meeting to take place on December 13, 2006.  The only discussion was at the resolution session meeting which did not result in a resolution of the issues since the parent wanted a different placement for her child.  In fact at the resolution session meeting, the advocate indicated that she was unaware of the date she was available.  (AR. 28)  Therefore, DCPS convening the meeting on December 13, 2006 continues to bolster the Plaintiff's argument that the Defendant has complete disregard for the parent's right to be a member of a team discussing her child's education.

**C.    THE JANUARY 11, 2007 HOD MUST BE REVERSED BECAUSE THE DEFENDANTS DID NOT REBUT THE PRESUMPTION OF HARM**

On July 26, 2006, DCPS entered into a Consent Decree as a result of the class action suit *Blackman v. District of Columbia,* Civil Action No. 97-1629 (D.D.C. Aug. 24, 2006) and on August 24, 2006, the court approved it.  According to the Blackman/Jones Consent Decree "this Consent Decree establishes a rebuttable presumption of harm for students denied timely hearings or HOD and for students who failed to receive timely implementation of HODs and SAs." (Blackman/Jones Consent Decree, ¶ 74 at 39)  Since DCPS failed to complete the evaluations or convene the meeting within the appropriate time frame and failed to make an appropriate determination as to compensatory education, DCPS is in violation of the Consent Decree. Although defendants state that the Plaintiff must show a loss of educational opportunity, the Consent Decree has already found that there is a presumption of harm and the burden then shifts unto the Defendants to rebut that presumption.  Therefore, since Defendants, in their motion did not provide any evidence to rebut the presumption of harm, except that he made progress, then there is a denial of a FAPE.

Additionally, the cases the Defendants cited are distinguishable from the instant case in that the HOD was issued because there as already a determination of a denial of a FAPE and as such DCPS was only supposed to comply with the HOD in a timely manner.  In *Eric David Olson, et al., Plaintiffs v. Robinsdale Area Schools, et al., Defendants, Civil No. 04-2702 (D. Minn. 2004)*, the court found that:

> Where a school district has refused to implement a hearing officer's decision, courts generally find irreparable harm. The injury is actual and imminent because the student is currently being deprived of the free appropriate public education to which he or she is entitled under the Individuals with Disabilities Education Act.

In this case, Defendants blatantly refused to comply with the HOD and have yet to provide the student with the ordered compensatory education.  The right to have a hearing officer's decision carried out is a right "secured by the laws of the United States." *Robinson v. Pindwerhughes, 810 F.2d 1270, 1275 (4th Cir. 1987)*.  However, DCPS did not provide the student with that right.

Although DCPS cited to Lesesne v. District of Columbia, 447 F.3s 828, 834 (D.C. Cir., 2006), this case is distinguishable because in Lesesne, the court determined that the issues were purely procedural.  However, in this case, the Consent Decree has made the failure to comply with a HOD substantive because it is presumed to be harm to the student.  Therefore, Lesesne does not apply to this case.

### D.  HIGH ROAD IS AN APPROPRIATE PLACEMENT BECAUSE IT CAN PROVIDE EDUCATIONAL BENEFIT

In Florence County School Dist. v. Carter, 510 US 7 (1993), the Supreme Court ruled that if there is a denial of FAPE, a private placement is warranted.  According to the Consent Decree, it is a rebuttable presumption that there harm and as such there has been a denial of FAPE when the HOD is violate.  In this case, it is clear that the HOD was violated on several levels.  However, more importantly, DCPS has not provided the student with appropriate services as is clearly shown by the regression he has indicated based on the 2003 and 2006 psycho-educational evaluation.  It is incorrect that the evaluations indicate a need for combination setting.  (Defendant's motion at page 14)  As to Defendant's argument that 20 U.S.C. §1412(a)(5)(A) requires that the students are placed in the least restrictive environment, that is true.  However, the Defendant failed to indicate that it should be the least restrictive environment that would lead to educational benefit.  However, in this case there has clearly not been any benefit as the student has clearly regressed.  In fact the DCPS' own witness, Ms.

Barnes testified to the fact that his IEP goals, including his speech have not changed since 12/13/04, which was almost two years at the time of the hearing (T. 120). This clearly shows the lack of progress because he continues to be taught with the same goals. His teacher testified to the fact that his problem with reading comprehension impacts his math ability. (T. 130) Therefore, this clearly shows the problems J.N. has and the fact that they still affect him in class. Furthermore, when Plaintiff's counsel asked his teacher, Ms. David that "as educator, if you knew that his scores in reading went down 27 points, what would that say to you?" Ms. David replied "that would say that he didn't make the progress that year that he was supposed to be making . . . " (T. 137) This fact shows that clearly even his teacher realized that based on the test scores, he did not make progress.

The Court in <u>Carter</u> also determined that the school of parent's choice does not have to meet the standards provided by the school system as long the school can provide educational benefit. According to David Clarke of High Road, High Road can provide him with educational benefit. (T. 53-54) As a result, the only course that was left to the Hearing Officer was to order that DCPS place and fund J.N. at High Road School of DC. However, the hearing officer did not do so and as such the court should overturn the January 11, 2007 HOD.

**E. THE HEARING OFFICER DID NOT CONSIDER ALL OF THE EVIDENCE PRESENTED AND AS SUCH HIS DECISION SHOULD BE REVERSED**

Nowhere in the HOD does the hearing officer address the HOD violation or the Consent Decree argument made by the Plaintiffs' counsel. Additionally, nowhere in the HOD does the hearing officer address the only concrete evidence he has in the record that shows whether there was academic growth, ie the 2003 and 2006 psycho-educational evaluations. (AR. 93-97 & AR. 164-175) He made no mention of the fact that the evaluations were completed by the DCPS and that the student's teacher indicates that a

27-point drop in reading scores shows that the student did not make the required progress.  (T. 137) Although the hearing officer included that the student progressed since August, he did not address the fact that the student has been working on the same goals since December 2004.   The hearing states that DCPS made diligent efforts to contact the parent but nowhere in the order did he mention the seven letters that the parent's advocate sent to DCPS either requesting the ordered evaluations or requesting a meeting to be convened. Although the hearing states that the student had progressed, he did not have anything in evidence to show the progress that he had supposedly manifested.

Although Defendant's counsel would present that the court cannot make an independent decision that is not true.  Even the case law cited by the Defendant does not state that.  If the Court cannot make an independent decision, then there is no reason to have a review process by a court of competent jurisdiction.  Clearly the documentary evidence that the student did not make progress far outweighs the contention that the student made progress.  Therefore, the January 11, 2007 HOD should be reversed.

## **CONCLUSION**

WHEREFORE, the Plaintiffs respectfully request this Honorable Court to grant plaintiff's motion for summary judgment, deny Defendants' motion and issue an order directing DCPS to fund the student at High Road.  In addition, plaintiff requests that the Court set aside the HOD as incorrect because it contravenes the spirit of the Act in that the hearing officer did not apply the appropriate the evidence in making his final decision.  Furthermore, the court should grant the Plaintiff's request for attorneys' fees and costs for this action and the administrative proceedings.

Respectfully Submitted,

THE LAW OFFICES OF CHRISTOPHER N. ANWAH

By:  _____*/s/Fatmata Barrie/s/*_____

Fatmata Barrie, Bar #485122
LAW OFFICES OF CHRISTOPHER N. ANWAH
10 R Street, NE
Washington, D.C. 20002
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: fbarrie@verizon.net

## CERTIFICATE OF SERVICE

I HEREBY certify that copies of the foregoing motion were electronically filed on April 15, 2008 and the court would notify parties using Court's e-file system.

_____*/s/FatmataBarrie/s/*_____
Fatmata Barrie

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **KEA NORRIS, et al**     * | |
|                            * | |
| **Plaintiff**     * | |
|                            * | **Civil Action No. 07-0665 (RWR)** |
| **v.**     * | |
|                            * | |
| **DISTRICT OF COLUMBIA, et al**     * | |
|                            * | |
| **Defendants**     * | |

_____

## PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

(The paragraph numbers correspond with the Defendants' statement of material facts.)

5.   It is true that the HOD states such but the record is clear that the parent, through counsel made about seven attempts to get the evaluations and convene a meeting.

6.   It is true that the hearing officer made such a finding but it does not make the decision appropriate.

8.   Plaintiff denies that there was no response as there are several letters in reference to contact with the school. (AR. 181-201)

9.   Plaintiff agrees that DCPS convened the meeting without the parent but it was not due to any diligence on the part of the school system as there were several letters to the school from the parent's advocate. (AR. 181-201)

13.  Plaintiff agrees that the team met and they made changes to the IEP but not that it met his needs because he was not progressing.

17.  Plaintiff agrees that Plaintiff did not attend the December 13, 2007 meeting, but disagrees that at the Resolution Meeting, the meeting was agreed upon by all members which includes the parent. (AR. 24-33)

27.  Although Ms. Peters may have testified to his "tremendous" progress, his goals had remained the same for over two years (T. 120) and the IEP report card shows that he was acting same way as previously.  (AR. 210-212)

28.  There was nothing in the record to show this growth in J.N.

29. Although the claim is that he made progress, he has continued to work with the same goals for over two years. (T. 120)

30. Same as 29

31. Same as 29

33. Same as 29

34. She has only worked with him since August, which was for three months at the time of the hearing. (T. 126)

36. Yes the HOD states as such but in the trascripts Ms. David initially states that he is working towards his goals.  (T. 127)

Respectfully submitted
LAW OFFICES OF CHRISTOPHER N. ANWAH.


By:   _/s/    *Fatmata Barrie*    /s/_____
        Fatmata Barrie, Bar #485122
        LAW OFFICES OF CHRISTOPHER N. ANWAH
        10 R Street, NE
        Washington, D.C. 20002
        Phone: (202) 626-0040
        Fax: (202) 626-0048
        Email: fbarrie@verizon.net

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

KEA NORRIS, et al          *
                           *
          **Plaintiff**         *
                           *          **Civil Action No. 07-0665 (RWR)**
     **v.**                    *
                           *
**DISTRICT OF COLUMBIA, et al**   *
                           *
          **Defendants**        *

_____

### PLAINTIFFS' RESPONSE TO DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

In their response, Defendants seem to think that because the Plaintiff referred to nine facts, that means they do not have enough weight. In fact it is quite the opposite because if one looks at the Defendant's facts, they are mostly quotes from the hearing or quotes from the HOD. Plaintiff's facts on the other hand go directly to facts that can be substantiated by testing and documentations not by someone's off-hand opinion. Additionally, Plaintiff's facts are stated chronologically and are geared towards addressing the major issues in the Plaintiff's complaint, IEP, Placement and Services for the student and since the witnesses' testimony completely contradicted the written documentation, the Plaintiff saw no reason to include those facts in her Statement of Facts. Additionally, the individual facts are detailed and cover more than one issue at a time. Therefore, the Plaintiff's facts go directly to the case at hand and yes they directly contradict Defendant's facts but then if they did not, we would not have needed to appeal the decision.

(The paragraph numbers correspond with the Defendants' statement of material facts.)

2.   What is there to dispute when the documents speak for themselves.  The scores are clear. (AR. 97 & AR. 167)

7.   Although the Defendant claims in their Motion that the notes from the December 13, 2006 meeting were placed in the record and submitted to both counsel and the hearing officer, there is nothing in the record to indicate that it was sent to the Plaintiff's counsel as the meeting took place following the November 30, 2006 due process hearing.  Even though Defendant in their motion indicates that their attorney forwarded the meeting notes after the hearing that was not what the Plaintiff was stating in the Motion for Summary Judgment.  The Plaintiff was referring to the fact that the hearing officer required written closing statements but that the Defendant did not provide it.  At no time was the record left open for any documents that may become available especially when the Plaintiff would not have the opportunity to cross-examine on the occurrence of the meeting or anything else that has to do with the meeting.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

KEA NORRIS, et al                          *
                                           *
      **Plaintiff**                      *
                                           *       **Civil Action No. 07-0665 (RWR)**
    **v.**                                *
                                           *
**DISTRICT OF COLUMBIA, et al**            *
                                           *
    **Defendants**                      *
_____

## ORDER

UPON  CONSIDERATION  of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and Defendant's Oppositions thereto, it is hereby this _____ day of _____ 2008:

**ORDERED** that Plaintiffs' Motion be and is hereby GRANTED, and it is

**FURTHER ORDERED** Defendants' Motion is hereby Denied and it

**FURTHER ORDERED** that the January 11, 2007 Hearing Officer's Determination is hereby reversed, and it is

**FURTHER ORDERED** that the student is placed at High Road of DC and it is

**FURTHER ORDERED** that Plaintiff is awarded attorney fees for this action and the administrative action and it is

**FURTHER ORDERED** _____

_____

_____ **SO ORDERED**


                                      _____
                                            JUDGE