**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **J.N., et al.,** Plaintiffs, v. **DISTRICT OF COLUMBIA, et al.,** Defendants. | ) | **Civil Action No. 07-665 (RWR)** |

**MEMORANDUM OPINION**

Kea Norris and her minor son, J.N., brought this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1487 (2000), challenging a hearing officer's dismissal of her due process complaint that alleged that the District of Columbia Public Schools ("DCPS") denied J.N. a free, appropriate public education ("FAPE") by failing to comply timely with earlier directives in a hearing officer's determination ("HOD"), failing to allow Norris to help develop J.N.'s individualized education program ("IEP"), and failing to provide J.N. with an appropriate educational placement. The parties have cross-moved for summary judgment. Although DCPS did not comply timely with the HOD, Norris has failed to show error in the hearing officer's determination that the delay was not harmful. However, DCPS has shown no evidence of any reasonable diligence in responding to or accommodating Norris' requests to reschedule the meeting to develop J.N.'s IEP so that she could participate,

a procedural failing that renders infirm the hearing officer's finding that J.N.'s school placement was appropriate. Thus, each motion will be granted in part and denied in part.

**BACKGROUND**

When this complaint was filed, J.N. was a twelve-year-old student enrolled at a public school, Aiton Elementary ("Aiton"), and classified as learning disabled and eligible for special education and related services. (Defs.' Stmt. of Material Facts ("Defs.' Stmt.") ¶¶ 1-3.) In January 2006, an IEP was developed requiring that J.N. receive twelve and one-half hours of specialized instruction, one hour of speech language services, and 30 minutes of psychological services each week. (Id. ¶ 7.) In March 2006, at Norris' request, a hearing officer directed DCPS to conduct a speech and language evaluation, an occupational therapy evaluation and a clinical psychological evaluation within 10 days of the order; perform a Functional Behavioral Assessment and a Behavior Intervention Plan within 15 days of the order; complete an Assistive Technology evaluation withing 15 days of the order; and convene a multi-disciplinary team ("MDT")/IEP meeting no later than 15 days after the receipt of the last evaluation. (See A.R., Ex. 7. at 0204.)

Months later, on September 8, 2006 Norris filed an administrative due process complaint against DCPS arguing, in part, that DCPS had failed to complete the required evaluations,

failed to convene an MDT/IEP meeting, and failed to provide the necessary compensatory education. (A.R., Ex. 10 at 0328-32.) DCPS eventually completed all of the evaluations (Def.'s Stmt. ¶ 5), although J.N. appears to have received all of the ordered services in the interim. (Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. for Summ. J. and in Opp'n to Pls.' Mot. for Summ. J. ("Defs.' Mem.") at 13.) On September 21, 2006, DCPS conducted the required MDT/IEP meeting without Norris after notice to her (Defs.' Stmt. ¶¶ 10, 13) and unanswered requests by her to DCPS to reschedule it. (See A.R., Ex. 6 at 0193-94.) At the meeting, DCPS developed another IEP, calling for the same amount of specialized instruction and services as those called for in the previous IEP. (Defs.' Stmt. ¶ 7.)

Two months later, a hearing officer held a hearing on Norris' due process complaint. The three DCPS professionals who had been providing J.N. with special education instruction, speech and communication services, and psycho-social counseling services under the IEP over the previous year testified. All said J.N. had made progress at Aiton since the previous year. (Defs.' Stmt. ¶¶ 18, 23-36.) On January 11, 2007, the hearing officer dismissed the plaintiffs' administrative complaint after finding that DCPS had complied -- although untimely -- with the March 2006 HOD, that the delay did not harm J.N., that DCPS' efforts to obtain Norris' participation in the IEP meeting were

diligent and reasonable and revealed no procedural flaw, and that J.N.'s educational placement at Aiton was appropriate. (A.R., Ex. 2 at 0007.) Norris brought this action, challenging the hearing officer's dismissal.

**DISCUSSION**

The parties have cross-moved for summary judgment under Federal Rule of Civil Procedure 56(c). Rule 56(c) provides for entry of summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

IDEA "ensure[s] that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).

It "allows parents to file administrative complaints and request due process hearings 'with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.'" Wright v. District of Columbia, Civil Action No. 05-0990 (RWR), 2007 WL 1141582, at *2 (D.D.C. April 17, 2007) (quoting 20 U.S.C. § 1415(b)(6)(A)). A reviewing court is to "review the administrative record, hear additional evidence if so requested by the parties, and, based on the preponderance of the evidence, . . . grant such relief as the court determines is appropriate." Id. (internal quotation marks omitted). The administrative officer's findings must be given due weight, but less deference is called for than would normally be accorded an administrative decision. See Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988). "[A] party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong, and . . . a court upsetting the officer's decision must at least explain its basis for doing so." Id. A court's primary consideration is compliance with the procedural requirements of IDEA, and a court should not substitute its own judgment for that of school agencies regarding what is in the best educational interests of a student. Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206-07 (1982).

I. DELAYED COMPLIANCE WITH HOD

"[P]rocedural violations of IDEA do not, in themselves, inexorably lead a court to find a child was denied FAPE." Schoenbach v. District of Columbia, 309 F. Supp. 2d 71, 78 (D.D.C. 2004). "[A]n IDEA claim is viable only if those procedural violations affected the student's *substantive* rights." Lesesne ex rel. B.F. v. District of Columbia, 447 F.3d 828, 834 (D.C. Cir. 2006) (emphasis in original); see also C.M. v. Bd. of Educ. of Union County Reg'l High Sch. Dist., 128 Fed. Appx. 876, 881 (3d Cir. 2005) (per curiam) ("[O]nly those procedural violations of the IDEA which result in loss of educational opportunity or seriously deprive parents of their participation rights are actionable."); see, e.g., Kruvant v. District of Columbia, 99 Fed. Appx. 232, 233 (D.C. Cir. 2004) (denying parents relief because "although DCPS admits that it failed to satisfy its responsibility to assess [the student] for IDEA eligibility within 120 days of her parents' request, the [parents] have not shown that any harm resulted from that error"). "A delay does not affect substantive rights if the student's education would not have been different had there been no delay." D.R. ex rel. Robinson v. Gov't of D.C., 637 F. Supp. 2d 11, 18-19 (D.D.C. 2009) (finding that the defendant's delay affected the student's substantive rights because the student's most recent IEP differed from the one previously issued).

Norris argues, in part, that the hearing officer erred by not finding that DCPS' failure to comply timely with the March 2006 HOD caused J.N. irreparable harm. Norris, however, has failed to show that the hearing officer's conclusion was wrong. Although explanation for that conclusion was spare, the record evidence reflected a basis for the conclusion. While the ordered evaluations were delayed, J.N. received in the interim the services and instruction that the IEP completed in January 2006 required. The fact that the IEP completed in September 2006 (A.R., Ex. 9 at 0303) called for the same amount of specialized instruction and services as the one completed in January 2006 (Id., Ex. 7 at 0229) was some evidence of lack of harm. See, e.g., D.R. ex rel. Robinson, 637 F. Supp. 2d at 18. The testimony by J.N.'s teacher and counselors that he had made progress under the IEP supported the hearing officer's conclusion. Norris has not shown that harm resulted from the delayed evaluations and IEP meeting, and the hearing officer's determination that DCPS' delay did not result in educational harm to J.N. will be upheld.

II. MEANINGFUL PARTICIPATION

The IDEA's procedural safeguards help ensure that parents are able to participate fully in decisions affecting their child's education. See Rowley, 458 U.S. at 183 n.6; see also Holland v. District of Columbia, 71 F.3d 417, 421 (D.C. Cir.

1995). The IDEA "guarantees parents of disabled children the opportunity to participate in the evaluation and placement process." LeSesne ex rel. B.F. v. District of Columbia, Civil Action No. 04-0620 (CKK), 2005 WL 3276205, at *2 (D.D.C. July 26, 2005); see also 20 U.S.C. §§ 1414(f), 1415(b)(1). While "not every technical violation of the procedural prerequisites of an IEP will invalidate its legitimacy . . ., procedural inadequacies that . . . seriously infringe upon the parents' opportunity to participate in the IEP formulation process . . . clearly result in the denial of a FAPE." A.I. ex rel. Iapalucci v. District of Columbia, 402 F. Supp. 2d 152, 164 (D.D.C. 2005) (internal quotation marks and citations omitted).

The applicable regulations further emphasize the importance of parental participation in IEP meetings:

> Each public agency must take steps to ensure that one or both of the parents of a child with a disability are present at each IEP meeting or are afforded the opportunity to participate, including (1) [n]otifying parents of the meeting early enough to ensure that they will have an opportunity to attend; and (2) [s]cheduling the meeting at a mutually agreed upon time and place.

34 C.F.R. § 300.322(a). However, "[a] meeting may be conducted without a parent in attendance if the public agency is unable to convince the parents that they should attend" and the agency makes detailed records of the attempts to contact the parent. See Id.

Norris argues that she was not given an opportunity to participate in the September 2006 IEP meeting. (Pls.' Mem. of P. & A. in Supp. of Pls.' Mot. for Summ. J. ("Pls.' Mem.") at 9-12.) The record demonstrates that DCPS faxed to Norris' representatives on August 30, 2006 a notice that the MDT/IEP meeting was being scheduled. The notice invited Norris to attend and to respond confirming one of three suggested meeting dates: September 7, 2006, which was eight days away; September 14, 2006; and September 21, 2006. Having received no response, DCPS faxed on September 12, 2006 a second notice and invitation offering as suggested meeting dates September 14, 2006, which was two days away, and September 21, 2006. (See A.R., Ex. 8 at 0279; Ex. 9 at 0283, 0286, 0288.) Having still received no response, DCPS faxed on September 18, 2006 a third notice and invitation, informing Norris that the meeting would be held on September 21, 2006, which was three days away. (See A.R., Ex. 9 at 0289; Ex. 6 at 0193 (letter acknowledging receipt).) Each notice asked the invitee to call Angela Allen at the Aiton phone number typed on the notice to arrange a mutual time if a listed time was inconvenient. Although each notice said that "[a]fter the third attempt to contact the parent, the meeting will be held without further notice[,]" no notice warned that the rescheduling option was unavailable after a third notice was issued. (See A.R., Ex. 9 at 0286, 0288-89.)

Norris presented evidence of a timely response and the hearing officer failed to address it. (A.R., Ex. 2 at 0003 (January 11, 2007 HOD identifying plaintiffs' record exhibit "JN-28," now marked as A.R., Ex. 6 at 0193 (see A.R., Ex. 2 at 0010-11 (referring to "JN-28"))).) While Norris' representative Annie Pressley responded only after the third notice was sent, she did call Angela Allen on each of the next three days -- September 19, 20, and 21, 2006 -- and leave messages that the September 21 date was not a good date. Pressley also spoke with the social worker on the MDT team and proposed two alternative meeting dates and times in early October. The social worker vowed to notify Allen that Norris and her representative were not available on September 21. DCPS did not respond to Pressley before holding the September 21 meeting (see A.R., Ex. 6 at 0190, 0193), and has presented no evidence to rebut Norris' evidence of her timely response to the third DCPS notice.

While the D.C. Circuit does not appear to have addressed whether a failure to accommodate a parent's reasonable request to reschedule an IEP meeting constitutes a denial of a FAPE, the Ninth Circuit has found that refusing to reschedule an IEP meeting at the parents' request represents a significant procedural defect. In Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist. No. 69, 317 F.3d 1072 (9th Cir. 2003), the court stated that the school district violated IDEA by failing to

coordinate with a student's parents to schedule the IEP, and by simply notifying parents of the meeting and refusing to honor the parents' timely rescheduling requests. Id. at 1079 (overruled on other grounds); cf. Michael J. v. Derry Twp. Sch. Dist., No. 103CV1104, 2006 WL 148882, at *17 (M.D. Pa. Jan. 19, 2006) (finding no procedural violation where the district scheduled and held without the parents an IEP meeting on a date reached by mutual agreement with the parents, encouraged the parents to participate, and noted that the meeting would go forward in any event if the parents declined to participate).

Even though DCPS attempted to coordinate a meeting with Norris as early as August 30, 2006 (A.R., Ex. 9 at 0286), the parties never agreed mutually on the September 21 meeting date. Also, there is no evidence that Norris could not be convinced to attend the meeting; rather, Norris made timely, diligent and reasonable efforts to reschedule the September 21 meeting, and there is no evidence that DCPS did anything to respond to or accommodate Norris' timely and reasonable requests to reschedule. DCPS failed to fulfill its duty to schedule a mutually agreed upon time and place for the IEP meeting. Thus, Norris has provided sufficient evidence to support her claim that the hearing officer's determination that DCPS' efforts were diligent and reasonable was wrong.

III. APPROPRIATE PLACEMENT

"IDEA was intended to provide a basic floor of opportunity and an individualized plan designed to provide educational benefit to the handicapped child." Schoenbach, 309 F. Supp. 2d at 80 (internal quotation marks omitted). The question of whether a public school placement is appropriate rests on "(1) whether DCPS has complied with IDEA's administrative procedures and (2) whether or not the IEP . . . was reasonably calculated to provide some educational benefit to [the student.]" Id. at 78. "A school district must comply with the procedural requirements and safeguards listed in 20 U.S.C. § 1415." Id.

"An IEP must be 'reasonably calculated' to confer educational benefits on the child, . . . but it need not 'maximize the potential of each handicapped child commensurate with the opportunity presented non-handicapped children.'" Anderson v. District of Columbia, 606 F. Supp. 2d 86, 92 (D.D.C. 2009) (quoting Rowley, 458 U.S. at 200, 207) (internal citations omitted). The "sufficiency of the educational benefits offered [is not] measured by any single, narrow standard." Reusch v. Fountain, 872 F. Supp. 1421, 1425 (D. Md. 1994). "[A]cademic progress is strong, though not [dispositive], evidence that an IEP provides educational benefit." Schoenbach, 309 F. Supp. 2d at 80-81 (considering the student's academic progress, as well as her social-emotional, organizational, interpersonal social,

coping, and attending skills). "[C]ourts must 'afford some deference to the expertise of the . . . school officials responsible for the child's education.'" Anderson, 606 F. Supp. 2d at 92 (quoting Lyons by Alexander v. Smith, 829 F. Supp. 414, 418 (D.D.C. 1993)). Moreover, "a District Court must accept the state agency's credibility determinations unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion." Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S., 381 F.3d 194, 199 (3d Cir. 2004) (internal quotation marks omitted).

Norris argues that Aiton is an inappropriate placement for J.N., in part, because DCPS completed the IEP without her involvement. (Pls.' Mem. at 14.) Norris also argues that the IEP is not reasonably calculated to provide J.N. some educational benefit because certain educational evaluations reveal that J.N. has regressed in all subject areas. (Pls.' Opp'n to Defs.' Mot. for Summ. J. and Reply to Defs.' Opp'n to Pls.' Mot. for Summ. J. ("Pls.' Opp'n") at 8-9.)

Norris' substantive argument does not hold sway. Norris cited two DCPS pyscho-educational evaluations showing that J.N.'s scores had declined (A.R., Ex. 4 at 0093-97; Ex. 6 at 0164-75), and Norris' own hearing testimony that J.N. had been at Aiton for over three years and she had seen no improvement in him. (Pls.' Mem. at 13.) The only other testimony Norris offered at the

hearing was that of an administrator at High Road Academy ("High Road"), a full-time, special education private school, who testified that J.N. had been accepted at High Road and that High Road is an appropriate placement for J.N. (A.R., Ex. 2 at 0005 ¶¶ 6-7.)

The defendants, meanwhile, concede that the evaluations offered by Norris reveal that he scored lower in the academic areas tested (Def.'s Mem. at 11), but they argue that the evaluations are not conclusive evidence that J.N. is not receiving some educational benefit. The defendants also argue that the plaintiff has failed to dispute the testimony offered by "three DCPS witnesses *with personal knowledge of J.N.* who testified that J.N. *is* making progress and that Aiton can implement his IEP." (Id.; see also A.R., Ex. 2 at 0005-6 ¶¶ 8-13.) Furthermore, the defendants cite to the DCPS professionals' testimony that J.N. has become more tolerant to change and more amendable to challenging himself (Defs.' Mem. at 9; A.R., Ex. 12 Tr. 1:11-13), and has progressed in the areas of speech, communication, math and reading. (A.R., Ex. 2 at 0006 ¶¶ 12, 14.) The hearing officer found this testimony persuasive, stating that "all of DCPS' witnesses credibly testified that the student['s] IEP was being implemented, the student had made progress with his communication problems and the student was receiving some academic benefit." (A.R., Ex. 2 at 0007.)

Although the evaluation evidence provided by Norris can tend to support her argument that Aiton is an inappropriate placement, it is not conclusive. Norris has not presented a sufficient basis for this court to discredit the hearing officer's credibility determinations or to substitute her judgment for that of the hearing officer in weighing it against the evidence regarding J.N.'s best educational interests provided by the school officials responsible for J.N.'s education.

Norris' procedural argument, however, has merit. While not every procedural violation of the IDEA is fatal to an IEP's legitimacy, DCPS's failure to meet its obligation to coordinate with Norris to schedule J.N.'s IEP meeting eliminated her ability to participate in the formulation process. See, e.g., A.I. ex rel. Iapalucci, 402 F. Supp. 2d at 164 (noting that procedural violations that seriously infringe upon the parents' opportunity to participate in the IEP formulation process clearly result in a denial of a FAPE); Amanda J. ex rel. Annette J. v. Clark County Sch. Dist., 267 F.3d 877, 892 (9th Cir. 2001) ("Procedural violations that interfere with parental participation in the IEP formulation process undermine the very essence of the IDEA. An IEP which addresses the unique needs of the child cannot be developed if those people who are most familiar with the child's needs are not involved or fully informed."). Furthermore, "Congress placed every bit as much emphasis upon compliance with

procedures giving parents . . . a large measure of participation at every stage of the administrative process . . . as it did upon the measurement of the resulting IEP against a substantive standard." Rowley, 458 U.S. at 205-06. By failing to respond to Norris' request to reschedule and formulating the September IEP without Norris' attendance at the IEP meeting or input, DCPS' actions "result[ed] in the denial of a FAPE." A.I. ex rel. Iapalucci, 402 F. Supp. 2d at 164; see also 20 U.S.C. §§ 1414(c) (requiring an IEP Team to "determine . . . the educational needs of the child" based in part upon "input from the child's parents"), 1415(b)(1) (requiring "[a]n opportunity for the parents of a child with a disability to examine all records relating to such child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child"); 34 C.F.R. § 300.322(a). Thus, DCPS' conduct failed the first prong of the test for whether a public school placement is appropriate, and Norris has shown that the hearing officer's decision that Aiton is an appropriate placement is flawed.[1]

---

[1]Norris argues that High Road is the appropriate placement for J.N., and the hearing officer's contrary decision is wrong. "The IDEA requires school districts to place disabled children in the least restrictive environment possible." Roark ex rel. Roark v. District of Columbia, 460 F. Supp. 2d 32, 43 (D.D.C. 2006) (citing 20 U.S.C. § 1412(a)(5); 34 C.F.R. 300.550; D.C. Mun. Regs. tit. 5, § 3011 (2006)). "[I]n determining the least restrictive environment, consideration is given to the types of services that the child requires." Id. (citing 34 C.F.R. § 300.552(d)). "Mainstreaming of handicapped children into

CONCLUSION

Although DCPS did not timely comply with the March 2006 HOD, Norris has failed show that the delay was harmful.  However, DCPS has failed to show that Aiton school officials made any reasonable efforts to respond to Norris' requests to reschedule the IEP meeting.  Thus, the hearing officer's determination that Norris had an opportunity to participate in J.N.'s IEP and that J.N.'s placement at Aiton is appropriate will not be sustained.  Accordingly, plaintiffs' motion for summary judgment will be

---

regular school programs where they might have opportunities to study and to socialize with nonhandicapped children is not only a laudable goal but is also a requirement of the Act." DeVries by DeBlaay v. Fairfax County Sch. Bd., 882 F.2d 876, 878 (4th Cir. 1989).

High Road is a full-time special education program with no general education classes.  (Defs.' Mem. at 14.)  None of the latest evaluations or latest or previous IEPs for J.N. in the record, however, call for a full-time special education placement.  (A.R., Ex. 2 at 0007; Ex. 7 at 0233; Ex. 9 at 0310, 0319.)  Rather, the evaluations reflect that J.N. needs a combination setting, with both general education and a special education resource classroom.  (A.R., Ex. 9 at 0319.)  Moreover, even though the IDEA guarantees each child a FAPE, it does not guarantee an "education that is designed according to a parent's desires." Hinson ex rel. N.H. v. Merrit Educ. Ctr., 579 F. Supp. 2d 89, 104-05 (D.D.C. 2008) (internal quotation marks omitted). Because High Road is not the least restrictive environment, the hearing officer's finding that J.N.'s placement at High Road is inappropriate will be upheld despite Norris' desire to have J.N. placed at High Road.

granted in part[2] and defendants' motion for summary judgment will be granted in part. A separate order accompanies this Memorandum Opinion.

SIGNED this 11th day of January, 2010.

/s/
RICHARD W. ROBERTS
United States District Judge

[2]In her summary judgment motion, Norris seeks attorney's fees and costs for this action and the administrative proceedings. (Pls.' Mem. at 15.) The IDEA authorizes an "award [of] attorney's fees to a 'prevailing party' who is the parent of a disabled child[.]" Jester v. Gov't of D.C., 474 F.3d 820, 821 (D.C. Cir. 2007); 20 U.S.C. § 1415(i)(3)(B). "An action or proceeding under IDEA includes both civil litigation in federal court and administrative litigation before hearing officers." A.C. ex rel. Clark v. District of Columbia, Civil Action No. 06-00439 (HHK), 2009 WL 4840939, at *2 (D.D.C. Dec. 15, 2009). "A party is generally considered to be the prevailing party if [she] succeeds 'on any significant issue in litigation which achieves some of the benefit . . . sought in bringing suit.'" Artis ex rel. S.A. v. District of Columbia, 543 F. Supp. 2d 15, 22 (D.D.C. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Because Norris has succeeded, in part, on the merits of her complaint, Norris is entitled to attorney's fees.